Sherry ALDRIDGE, Petitioner

v.

WORKERS' COMPENSATION APPEAL BOARD (KMART CORPORATION), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 26, 2014.

Decided Jan. 26, 2015.

Publication Ordered April 16, 2015.

David F. Stern, Philadelphia, for petitioner.

Ashley E. Drinkwine, Media, for respondent.

BEFORE: BERNARD L. McGINLEY, Judge, and MARY HANNAH LEAVITT, Judge, and P. KEVIN BROBSON, Judge.

OPINION BY Judge P. KEVIN BROBSON.

Petitioner Sherry Aldridge (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board). The Board affirmed the decision of a Workers' Compensation Judge (WCJ), which denied and dismissed Claimant's claim petition and penalty petition and granted the termination petition filed by Claimant's employer, Kmart Corporation (Employer). We affirm the Board's order.

Claimant sustained a work-related injury on March 7, 2011, during the course of her employment as a warehouse worker. On May 9, 2011, Employer issued a Notice of Temporary Compensation Payable—Medical Only (May 2011 NTCP), by which Employer agreed to pay for Claimant's medical treatment for her alleged work injuries, identified as left knee, left shoulder, and left hand contusions. (Reproduced Record (R.R.) at 34a.) Employer also indicated on the May 2011 NTCP that the ninety-day injury-investigation period granted to employers under Section 406.1(d)(6) of the Workers' Compensation Act (Act)[1] began the day after Claimant sustained her injuries—March 8, 2011—and ended on June 5, 2011. On June 13, 2011, the Bureau of Workers' Compensation (Bureau) issued a Notice of Conversion of Temporary Compensation Payable to Compensation Payable regarding the

---

1. Act of June 2, 1915, P.L. 736, added by the Act of February 8, 1972, P.L. 25, *as amended,* 77 P.S. § 717.1(d)(6). Section 406.1(d)(6) of the Act provides that "[i]f the employer does not file a notice under paragraph (5) within the 90-day period during which temporary compensation is paid or payable, the employer shall be deemed to have liability and the notice of temporary compensation payable shall be converted to a notice of compensation payable."

May 2011 NTCP, based upon the passing of the ninety-day period, and, thus, the May 2011 NTCP was converted by operation of law to an NCP (medical only). (R.R. at 35a.)

The primary subject of this appeal, however, relates to a second NTCP Employer issued on August 4, 2011 (August 2011 NTCP). The record does not clearly indicate the reason why Employer issued the August 2011 NTCP. Based upon our reading of the record, however, it appears that Employer somehow became aware of the possibility that Claimant was suffering from conditions in the nature of a left labrum and bicep tear and unable to work because of the injuries. (R.R. at 36a.) This Court can only speculate as to how Employer became aware of these conditions, but the possibility exists that Employer was concerned that the conditions were related to or arose from the identified work-related contusion injuries and recognized that the active NCP provided only for medical benefits and not for wage-loss benefits. Thus, it appears that Employer, either out of concern for Claimant's loss of wages or out of some abundance of caution regarding its potential liability, issued the August 2011 NTCP so that it could have an opportunity to investigate the nature of these other conditions.[2]

With regard to Claimant's potential labrum and bicep conditions, Employer indicated on that NTCP that the ninety-day period for those conditions began on July 20, 2011, and ended on October 17, 2011. The August 2011 NTCP initially included a check mark on the form suggesting that it, like the May 2011 NTCP, was a "medical only" NTCP. That form, however, also (inconsistent with a "medical only" NTCP) listed a weekly compensation rate for Claimant. Employer issued a second "corrected" NTCP (hereafter we will refer to this corrected NTCP as the August 2011 NTCP) that same day, apparently indicating that it did not intend for the NTCP filed earlier that day to be a "medical only" NTCP. (R.R. at 37a.) Unlike the earlier NTCP Employer issued that day, the corrected form did not have a check mark indicating that Employer intended to provide compensation only for medical treatment.

On September 15, 2011, Employer issued a Notice Stopping Temporary Compensation (NSTC). (R.R. at 40a.) Employer checked a box on that Bureau form indicating that Employer "decided not to accept liability, and attached is a notice of Workers' Compensation Denial. If you believe you suffered a work-related injury, you will be required to file a claim petition with the Bureau of Workers' Compensation in order to protect your future rights." (Id.)

Employer attached a Notice of Compensation Denial (NCD) to the NSTC, indicating that Employer was declining to pay wage loss benefits to Claimant based upon its determination that Claimant had "not suffered a loss of wages as a result of an already accepted injury." (R.R. at 41a.) The NCD, however, inconsistent with the August 2011 NTCP, identified the alleged conditions as the contusion injuries for which Employer was already liable based upon the earlier converted May 2011 NCP. The NCD provided that Employer would not pay wage loss compensation benefits

---

2. At page 9 of her brief, Claimant asserts that the Board erred by approving Employer's "use of a second NTCP for an injury already accepted by way of NCP." But, as we discussed above, that is not what happened here. Rather, Employer apparently issued the Au-

gust 2011 NTCP based upon some information it received that Claimant was suffering from conditions other than the contusions identified in the May 2011 NTCP that might or might not be related to the identified work-related contusion injuries.

(which it had only started to pay based upon the additional alleged injuries identified in the August 2011 NTCP).

On or about October 5, 2011, Claimant filed a claim petition in which she alleged that she sustained a left rotator cuff tear, left knee injury, and left hip injury during the course of her employment on March 7, 2011. Claimant sought wage loss benefits from March 7, 2011, onward and payment for medical treatment. On or about October 12, 2011, Claimant filed a penalty petition against Employer, asserting that Employer

> violated the Act by misuse of Bureau documents. A Medical Only [NTCP] was filed and rolled over to a Medical Only NCP. When I began losing time from work a second [NTCP] was then filed. The Act does not provide for this. Once I began losing time there was clearly no reason for this to be an investigation stage any further and a [NTCP] was inappropriate. Therefore the [NTCP] has the force and effect of an NCP and I am now out on an open NCP and not being paid wage loss. 50% penalties are sought as well as … counsel fees [under Section 440 of the Act, added by the Act of February 8, 1972, P.L. 25, *as amended*, 77 P.S. § 996].

(R.R. at 5a.) On or about January 27, 2012, Employer filed a termination petition, asserting that Claimant had fully recovered from her work-related injuries and was able to return to work without restrictions. (R.R. at 7a–8a.)

The Bureau assigned the three petitions to the WCJ, who conducted two hearings. Claimant provided testimony before the WCJ. Claimant and Employer each provided the deposition testimony of their medical experts. John Avallone, D.O., testified on behalf of Claimant, and John R. Donohue, M.D., testified in support of Employer's termination petition. The WCJ found both Claimant and her expert to be not credible and determined that Employer's expert's testimony was credible. The WCJ determined that Claimant's work-related injury consisted of left knee, left shoulder, and left hand contusions, as reflected in the converted June 2011 NCP, but that those conditions had fully resolved as of January 16, 2012. The WCJ also determined that Claimant failed to present credible evidence that Employer owed her any wage loss benefits or that she requires additional medical treatment for her work-related contusion injuries. Nevertheless, the WCJ also concluded that Employer violated the Act by issuing the August 2011 NTCP and NCD, but the WCJ elected not to award any penalties based upon his conclusion that Employer did not owe Claimant any benefits. Thus, the WCJ denied Claimant's claim petition and penalty petition and granted Employer's termination petition.

Claimant appealed to the Board, arguing that the WCJ erred in denying her claim petition where Employer's issuance of the August 2011 NTCP (in which it described Claimant's alleged injuries as left labrum and bicep tears and commenced payment for lost wages associated with those injuries) estopped Employer from denying liability for those injuries. The Board first noted that, under Section 406.1 of the Act, the May 2011 NTCP (medical only) Employer issued converted by law into an NCP (medical only). Employer does not deny that it remained liable for the injuries identified therein. The Board noted that Employer later received information indicating that Claimant had begun to suffer disability—*i.e.*, loss of earning power as a result of the March 7, 2011 injury. Based upon that new information, Employer issued the August 2011 NTCP that included wage loss benefits as well as medical benefits. The Board concluded that

Employer never accepted liability for the left labrum and bicep tear injuries by issuing the August 2011 NTCP and initiating wage loss benefits. Employer issued the NSTC and NCD relative to the August 2011 NTCP. The Board found significant the fact that Claimant had not suffered any lost work time until July 19, 2011, around the time she received a diagnosis regarding her shoulder and underwent a surgical procedure for the condition. Based upon the timing of the information, the Board found no fault with Employer's action, especially in light of the lack of any prohibition in the Act against an employer filing a subsequent NTCP upon receipt of new information concerning conditions that could potentially be related to a previously identified, non-disabling, work-related injury. With regard to the WCJ's granting of Employer's termination petition, the Board concluded that the only injuries for which Employer was liable were the contusion injuries identified in the converted NCP. The Board also concluded that Dr. Dono-

hue's testimony supported the WCJ's pertinent findings and conclusions.

In this appeal,[3] Claimant contends that (1) the WCJ and the Board erred in concluding that the August 2011 NTCP did not convert to an NCP, such that Employer is estopped from asserting that it is not liable for Claimant's left labrum and bicep tear injuries; and (2) the WCJ erred in granting Employer's termination petition.

Claimant first contends that, in the absence of affirmative statutory authority for an employer to issue more than one NTCP, once an employer issues a subsequent NTCP and accompanies that issuance with the payment of work-loss compensation, such action results in a de facto acceptance of the injuries identified on the subsequent NTCP. In making this assertion, Claimant relies upon this Court's decision in *Mosgo v. Workmen's Compensation Appeal Board (Tri–Area Beverage, Inc.)*, 84 Pa.Cmwlth. 316, 480 A.2d 1285 (1984).[4]

3. Our review is limited to considering whether necessary factual findings are supported by substantial evidence and whether any errors of law or violations of constitutional rights have occurred. 2 Pa.C.S. § 704.

4. In *Mosgo*, an employee suffered pains in his chest after performing arduous duties involving the delivery of beer barrels weighing 170 pounds. Employer relieved him of his duties, and he reported to his physician, who, in turn, sent him to the hospital where he was treated for a heart attack. The employer's insurer made inquiries regarding whether the heart attack was related to Mosgo's employment and proceeded to make lost wage payments to Claimant while it conducted an investigation. The insurer did not file an NTCP or an NCD, but instead made payments for a period of less than two months while it continued its investigation. After it completed its investigation it discontinued the compensation payments. The insurer "took none of the statutory steps required in order to discontinue compensation payments, such as a petition for termination." *Mosgo*, 480 A.2d at 1286.

Mosgo filed a petition to review notice of compensation, seeking an order directing the insurer to recommence payments. The insurer responded by asserting that it only made the payments pending the outcome of its investigation. Mosgo contended "that the insurer, having accepted liability by making payments under the Act, may not discontinue payments, and excuse its failure to seek termination ... on the basis of its noncompliance with the procedures mandated in Section 406.1 [of the Act]." The Court phrased the question before it as follows:

[W]hether a [WCJ] in such a case may require the Claimant to assume the burden of proof for the continuation of benefits when a proper Notice of Compensation Payable would have put the burden to terminate payments upon the Employer or its insurer. To allow such a shift of the burden of proof, of course, is to reward those employers and carriers who do not comply with the Act while disadvantaging those who do, not only as to the critical matter of burden of proof, but as to the grant or denial of a supersedeas, an issue which has

Employer responds to Claimant's argument by asserting that it was statutorily required to file the August 2011 NTCP under Section 406.1 of Act. Section 406.1(a) of the Act provides that "the first installment of compensation shall be paid not later than the twenty-first day after the employer has notice or knowledge of the employe's *disability*"—not injury. (Emphasis added.) Pursuant to Section 406.1(d)(1) of the Act, "[i]n any instance where an employer is uncertain whether a claim is compensable under this act or is uncertain of the extent of its liability under this act, the employer may initiate compensation payments without prejudice and without admitting liability pursuant to a[n NTCP]." Section 406.1(d)(3) of the Act provides that "[p]ayments of temporary compensation shall commence and the [NTCP] shall be sent" within the twenty-one day period set forth in Section 406.1(a). Employer further notes that Section 407 of the Act[5] provides that "[w]here payment of compensation is commenced without an agreement, the employer or insurer shall simultaneously give notice of compensation payable to the employe ..., on a form prescribed by the department, identifying such payments as compensation" under the Act.

Employer also contends that *Mosgo* is inapplicable to the analysis in this case, because *Mosgo* stands for the proposition that where payments are made in lieu of workers' compensation indemnity benefits, without issuance of any Bureau documents, the employer is deemed to have admitted liability for the work injury. In contrast, here, Employer specifically issued an NTCP, thereby reserving the right to dispute liability.

We agree with the Board that the Act does not specifically allow for or disallow the filing of a subsequent NTCP, and that Employer neither violated the Act nor is estopped from denying liability for Claimant's left labrum and bicep tear conditions. As the Board explained:

> Pursuant to Section 406.1 of the Act, once the initial medical only NTCP converted to an NCP, [Employer][6] had *accepted liability* for medical costs incurred for a left knee, left shoulder and left hand contusion injury. After [Employer] received information that Claimant was suffering disability as a result of that injury, it issued another NTCP indicating that it would make payments for both medical and wage loss liability for an injury described as a left labrum and bicep tear. However, pursuant to Section 406.1(d)(1) of the Act, by issuing this second NTCP, [Employer] was *not* admitting liability for this injury. Furthermore, since it did file a NCD and Notice Stopping Compensation within 90 days of issuing that *second* NTCP, [Employer] was not admitting liability for those additional injuries or for wage loss

---

been held to have constitutional implications. *Baksalary v. Smith*, 579 F.Supp. 218 (E.D.Pa.1984). *Id.* at 1288. This Court concluded that the insurer's failure to comply with the Act, specifically the failure to comply with Section 406.1 of the Act, estopped the insurer from disavowing its acceptance of liability for Mosgo's injury. Under such circumstances, the burden would be upon an insurer or employer to comply with the proper procedures for terminating compensation payments—a proceeding in which the insurer or employer would bear the burden of proof regarding a claimant's return to non-disability status. *Id.* at 1289.

5. Renumbered by the Act of June 26, 1919, P.L. 642, *as amended*, 77 P.S. § 731.

6. The Board mistakenly wrote that "Claimant had accepted liability," when it is apparent the Board intended to write that "Employer had accepted liability." (Board's opinion at 4.)

as a result of those injuries. Notably, since Claimant had not lost any time from work until after July 19, 2011 and did not have a diagnosis for her shoulder which required the surgery until around that time period, we don't see any violation of the Act in [Employer's] issuance of a second NTCP in August of 2011. Nor do we see a violation of the Act in the issuance of the NCD and Notice Stopping Compensation within the time frames required by the Act as [Employer] had subsequently determined that those additional injuries and Claimant's disability were not related to the work injury. We note that the Act does not specifically allow for or disallow the filing of subsequent temporary acceptance documents. Thus, contrary to Claimant's allegations, there was no clear-cut violation of the Act nor was [Employer] estopped from denying liability for payment of wage loss benefits for a left labrum and bicep tear merely because it had issued that second NTCP.

(Board's opinion at 4–5 (emphasis in original).)

As to *Mosgo*, we agree with Employer that it is not applicable to Claimant's case, as Employer in the case now before the Court did not make payments in lieu of workers' compensation without the issuance of Bureau documents. Unlike the facts in *Mosgo*, here Employer never took any steps to affirmatively accept liability for the alleged additional injuries listed in the August 2011 NTCP. To the contrary,

Employer filed the August 2011 NTCP in apparent response to new information it received regarding disability as a result of alleged additional work injuries. But, by issuing an NTCP, to which it ultimately followed-up with an NCD, Employer, unlike the insurer in *Mosgo*, signaled to Claimant that it did not accept the alleged additional injuries.[7] Contrary to Claimant's argument, Employer's issuance of the August 2011 NTCP did not bar Employer from denying liability for the injuries described therein.

Moreover, we note that the decision predates the 1993 amendments to Section 406.1 of the Act,[8] which added subsection (d), thereby including within the Act for the first time a provision for the issuance of an NTCP where liability is uncertain. Thus, at the time this Court decided *Mosgo*, an NTCP was not a tool available for use by employers. *Mosgo*, therefore, cannot support a conclusion that, once an employer issues a NTCP, any subsequently issued NTCP results in a de facto acceptance of the injuries identified in the subsequently issued NTCP.

Claimant further argues that because the NCD identified the injuries set forth in the May 2011 NTCP and not the additional injuries set forth in the August 2011 NTCP, Employer accepted liability for all of the described injuries. Claimant reasons that Employer was time-barred from challenging the injuries identified in the May 2011 NTCP because it had converted to an NCP by operation of law, thereby

7. Generally, a claimant who believes that an NCP contains a material error would have a burden to file a review petition to have additional injuries added to the identified work-related injuries. *Namani v. Workers' Comp. Appeal Bd. (A. Duie Pyle)*, 32 A.3d 850, 856 n. 4 (Pa.Cmwlth.2011), *appeal denied*, 616 Pa. 640, 47 A.3d 849 (2012). In that light, and as we suggest throughout this opinion, Employer in this case arguably may have acted without necessity by responding as it did to new infor-

mation concerning Claimant's condition, rather than waiting for Claimant to file a review petition, but we agree with the Board that we can find no harm in the manner by which Claimant's alleged work-related injuries reached the WCJ for resolution.

8. The Act of July 2, 1993, P.L. 190, amended Section 406.1 of the Act.

rendering Employer's NCD (which identified the injuries set forth in the May 2011 NTCP) untimely and ineffective. Claimant further reasons that because the NCD identified the injuries that were set forth in the May 2011 NTCP and not the August 2011 NTCP, Employer never denied liability for the injuries set forth in the August 2011 NTCP. As a result, Claimant takes the position that the August 2011 NTCP should have converted to an NCP for the additional injuries. Citing the humanitarian purposes of the Act, Claimant maintains that under the Act it is impermissible for an employer who has accepted liability for work injuries and related disability to stop paying benefits, and that, in this case, Employer did just that when it failed to issue an NCD pertaining to the injuries identified in the August 2011 NTCP and stopped paying compensation benefits.

Claimant, however, overlooks the nature of the injuries for which Employer accepted liability in its May 2011 NTCP and resulting NCP and the fact that Employer only accepted liability for *medical* payments for those injuries. Employer only initiated wage loss benefits when it issued the August 2011 NTCP. When the May 2011 NTCP converted into an NCP, it became clear that Employer would be liable for the *medical-only* claims related to the injuries identified as contusions. When Employer issued the August 2011 NTCP for the newly alleged disability from labrum and bicep tear injuries, it was clear that that August 2011 NTCP was unrelated to the contusion injuries for which Employer remained liable. The distinction was based upon the fact that the August 2011 NTCP provided for *wage loss* as well as medical benefits, unlike the initial contusion injuries. Here, Claimant bases her argument on the fact that when Employer issued the document indicating it was stopping temporary compensation because it disputed those injuries, Employer apparently erroneously stated it was stopping wage-loss payments for the established contusion injuries rather than the injuries identified on the August 2011 NTCP. Because Employer never started paying wage loss benefits for the contusion injuries, it is perfectly clear that the NSTC, despite language to the contrary, related to Employer's initiation and discontinuation/dispute of wage loss benefits for labrum and bicep tear injuries. The NCD, by implication, pertained specifically to the purpose for which Employer issued the second NTCP—the payment of temporary wage loss benefits for the potentially work-related left labrum and bicep tear injuries for which Employer had not accepted liability. Thus, common sense supports our conclusion that Employer never accepted liability for the alleged labrum and left bicep tear injuries for which Claimant sought wage loss benefits, which is consistent with the positions taken by the WCJ and Board.

Under these circumstances, Employer did not engage in any conduct that violates the Act, because it had no burden to initiate payment; it apparently anticipated that the injuries might be work-related, but, unlike the decision upon which Claimant relies, Employer accepted liability only for the injuries in the converted NCP. By issuing the August 2011 NTCP regarding potential work-related injuries, Employer in this case, unlike the employer in *Mosgo*, did not accept liability for the additional injuries. While we conclude that the record is unclear as to the reasons why Employer issued the August 2011 NTCP and do not believe Employer was required to take such action, we agree with the Board's conclusion that Employer did not admit liability by issuing the August 2011 NTCP and paying wage loss benefits; the fact that Claimant had not filed a review or claim petition at that time did not in any

way prejudice Claimant from doing so when Employer ultimately issued the NCD in response to its earlier issuance of the August 2011 NTCP regarding the additional injuries. Consequently, we conclude that the WCJ did not err in concluding that Employer was not estopped from discontinuing the wage loss benefits it had begun to pay Claimant based upon the August 2011 NTCP for Claimant's allegedly work-related left labrum and bicep tear conditions.

 With regard to the WCJ's determination granting Employer's termination petition, Claimant argues that Employer's testimony is not competent to support the WCJ's factual findings. Claimant asserts that Dr. Donohue's testimony fails to recognize all of Claimant's work-related injuries. Claimant bases this argument on the fact that Dr. Donohue only accepted the injuries identified in the May 2011 NTCP, and does not accept the injuries identified in the August 2011 NTCP. Claimant is correct in asserting that the testimony of a medical expert that fails to acknowledge or accept injuries an employer has accepted as work related is incompetent to support an employer's termination petition. *Elberson v. Workers' Comp. Appeal Bd. (Elwyn, Inc.)*, 936 A.2d 1195, 1199 (Pa.Cmwlth. 2007), *appeal denied*, 596 Pa. 463, 944 A.2d 752 (2008). In this case, however, based upon our analysis above, we reject Claimant's argument.

Employer never accepted liability for the additional injuries Claimant alleges she incurred. Dr. Donohue, therefore, did not have to testify regarding those injuries as if they existed. Claimant did not carry her burden of proof in her review petition, through which she sought to establish the existence of additional work-related injuries. As a result, Dr. Donohue was not required to accept the labrum and bicep tear as part of Claimant's work-related

injuries for the purpose of Employer's termination petition. Thus, we conclude that Dr. Donohue's testimony was not incompetent.

Accordingly, we will affirm the Board's order.

### ORDER

AND NOW, this 26th day of January, 2015, the order of the Workers' Compensation Appeal Board is AFFIRMED.