# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Judy McCarraher, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 1983 C.D. 2014 |
| | : | |
| Workers' Compensation Appeal Board | : | |
| (Eagleville Hospital), | : | |
| Respondent | : | |
| | | |
| Eagleville Hospital, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 1991 C.D. 2014 |
| | : | Submitted: August 7, 2015 |
| Workers' Compensation Appeal Board | : | |
| (McCarraher), | : | |
| Respondent | : | |

BEFORE: HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
HONORABLE ROBERT SIMPSON, Judge
HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**                    **FILED: November 3, 2015**

Before this Court are the cross appeals of Judy McCarraher (Claimant) and Eagleville Hospital (Employer) from a decision of the Workers' Compensation Appeal Board (Board) that affirmed in part, and reversed in part, the order of a Workers' Compensation Judge (WCJ). Specifically, the Board affirmed the WCJ's grant of Claimant's claim petition and the denial of Employer's modification/suspension and review petitions, and it reversed the WCJ's grant of Claimant's penalty petition.

In its appeal, Employer argues the WCJ erred in denying its modification/suspension petition where the uncontroverted medical evidence showed Claimant was capable of returning to sedentary work after her work injury, which Employer offered her. It also contends the WCJ erred in determining that Claimant's work injury included a lumbar disc herniation and right knee fracture.

In her appeal, Claimant contends the Board erred in reversing the WCJ's grant of her penalty petition where Employer misused Bureau of Workers' Compensation (Bureau) documents in order to negate its *de facto* acceptance of Claimant's work injury. Upon review, we affirm the Board's order.

## I. Factual and Procedural Background

Beginning in 2004, Claimant, a registered nurse, worked for Employer as an admissions nurse. In December 2010, Claimant sustained an injury when she slipped and fell on black ice in Employer's parking lot.

In January 2011, Employer issued a notice of temporary compensation payable (NTCP) for a date of injury of December 27, 2010. The NTCP indicated Claimant fell on ice in Employer's parking lot, hitting her left rib cage and right knee. The affected body parts were described as "lower back and right knee" and the type of injury as "contusion." Pet'r's Reproduced Record (R.R.) at 22.

Thereafter, in April 2011, Employer issued a notice stopping temporary compensation and a notice of workers' compensation denial (NCD), which indicated that although a work injury occurred, Claimant did not suffer any disability as a result of the injury.

2

Shortly thereafter, Claimant filed a claim petition alleging work-related injuries to her right knee and low back with an L4-5 disc herniation. She sought total disability benefits from December 27, 2010 and ongoing. Claimant subsequently amended her claim petition seeking to add radiculopathy and a non-displaced lateral tibial plateau fracture of her right knee as recognized injuries. Claimant also filed a penalty petition alleging Employer violated the Workers' Compensation Act[1] (Act) by "illegally pulling the [NTCP]" and by disregarding the medical evidence in issuing a "medical-only" NCD. Pet'r's R.R. at 2.

Employer filed an answer to the claim petition in which it admitted a moderate left disc herniation at L4-5 and a right knee contusion. In so doing, Employer specifically referenced its NCD in which it acknowledged that an injury occurred but denied Claimant suffered any disability as a result of the injury. Employer paid Claimant indemnity benefits in accordance with the NTCP it issued. It denied the material averments of the penalty petition.

In April 2011, Employer filed a modification/suspension petition based on Claimant's alleged failure to respond to offers of part-time work as of March 30, 2011 and full-time work at no loss of earnings as of April 25, 2011.

In May 2011, Employer forwarded Claimant a proposed agreement for compensation in which it agreed to pay partial disability benefits of $454.76 per week from March 30, 2011 through April 24, 2011, representing the difference between Claimant's total disability benefit rate and the available earnings from a

_____

[1] Act of June 2, 1915 P.L. 736, as amended, 77 P.S. §§1–1041.4; 2501–2708.

3

part-time job Claimant did not accept. Employer also enclosed a check for $1,689.11 with the agreement. In the proposed agreement, Employer specifically indicated it would not abrogate the challenge it made through the issuance of its "medical-only" NCD. Claimant cashed the check, but she did not execute the agreement.

Thereafter, Employer filed a second suspension petition alleging Claimant did not respond to an offer of modified work at no loss of earnings as of November 29, 2011. Employer also filed a petition to review compensation benefits in which it alleged that, based on the further analysis of its medical expert, Claimant's work injury did not involve a disc herniation at L4-5 or any apparent low back injury. Employer also stated it was continuing its investigation of Claimant's alleged work-related right knee injury. Hearings on the parties' various petitions ensued before a WCJ.

Before the WCJ, Claimant testified she sustained injuries while working for Employer when she slipped and fell on black ice, causing her to land on both knees and roll over onto her back. Claimant treated with Dr. Ari Greis, D.O. (Claimant's Physician), who continues to treat her. Claimant testified her low back is very painful, and she experiences pain on the left side with radiating pain down her left leg. Claimant testified she cannot return to work in any capacity because she cannot drive on a consistent basis, cannot take care of patients, cannot work while taking her prescribed narcotic pain medication and cannot respond to emergency situations. Claimant also explained that in November 2010, she sought treatment from Dr. Kenan Aksu for low back pain and

pain radiating down her leg. Dr. Aksu gave Claimant an injection that resolved her symptoms in that she was able to return to work without difficulty. Claimant further testified that in April 2011, she fell at home as a result of weakness in her left leg, suffering a right knee fracture, which fully resolved.

Claimant also testified on cross-examination by deposition. She explained that she is able to perform some cleaning activities, some cooking and some care for her two cats. Although Claimant has a driver's license, she does not drive because of her use of narcotic pain medication. At some point in the last five years, she developed pain in both knees, greater in her right knee than her left knee, which caused her to seek medical treatment. After her work injury, Claimant underwent an independent medical examination (IME) with Dr. Neil Kahanovitz (Employer's Spine Specialist). Claimant received notices of ability to return to work as well as job offer letters from Employer, but she did not respond to the job offer letters because Claimant's Physician did not release her to return to work.

Claimant also presented the deposition testimony of her Physician, who is board-certified in physical medicine and rehabilitation. Claimant's Physician testified he began treating Claimant in January 2011, at which time Claimant presented with a left-sided limp, pain in the lumbosacral junction and pain in the left lateral hip area. Claimant's Physician's examination revealed evidence of L-4 nerve irritation, and his findings were consistent with the results of a January 2011 lumbar MRI, which revealed an extruded disc herniation at L4-5. Claimant's Physician prescribed physical therapy, Flexeril, Percocet, Oxycodone and an epidural steroid injection that did not relieve Claimant's symptoms.

5

Claimant's Physician opined that Claimant's lumbar radiculopathy is attributable to her work injury. He also explained that in April 2011, Claimant suffered a fall at home when she experienced weakness in her left leg, resulting in a fracture injury to her right knee. Claimant's Physician opined that the fact that Claimant suffers ongoing leg symptoms as a result of her work-related lumbar radiculopathy "definitely contributed to her right knee injury and the fracture." Pet'r's R.R. at 44. He further opined that Claimant is incapable of returning to work in her pre-injury position or the modified position Employer offered her after the work incident.[2]

In response, Employer presented the deposition testimony of its Spine Specialist, who is board certified in orthopedic surgery. Based on his physical examination, his review of medical records and Claimant's history, Employer's Spine Specialist opined that Claimant's L4-5 disc herniation was not caused by the December 2010 work incident. Employer's Spine Specialist further opined that Claimant's April 2011 fall at home was not attributable to the December 2010 work incident because there was no clinical evidence of any motor strength deficit in her left lower extremity. Employer's Spine Specialist opined that he was unable to find any evidence that Claimant suffered a back injury in December 2010. He further opined Claimant was capable of performing the modified duty position that Employer offered Claimant.

---

[2] Claimant also presented the cross-examination testimony of Leslie Krosnowski, a claims adjuster, regarding the handling of Claimant's workers' compensation claim.

6

Employer also presented the deposition testimony of Dr. Kevin B. Freedman (Employer's Knee Specialist), who is also board-certified in orthopedic surgery and who was engaged to evaluate Claimant's knee condition. Employer's Knee Specialist conducted a physical examination, which revealed a severely limited range of motion in Claimant's knees consistent with significant osteoarthritis. He opined Claimant sustained bilateral knee contusions as a result of the December 2010 work incident, which fully resolved by the time of his examination. Employer's Knee Specialist opined that Claimant's April 2011 fall at home bore no relationship to the December 2010 work incident because there was no evidence of muscle weakness in her left leg before the fall occurred. He opined that Claimant requires no further treatment for her work-related knee contusions or her April 2011 right knee fracture, which healed. Employer's Knee Specialist opined Claimant is capable of returning to work in the modified position that Employer offered Claimant.[3]

Ultimately, the WCJ credited the testimony of Claimant and Claimant's Physician. The WCJ found that Claimant sustained a disc herniation/extrusion and resultant radiculopathy at L4-5 as well as a right knee contusion, caused by her fall in December 2010. The WCJ further found Claimant sustained a right knee lateral tibial plateau fracture in a fall at home in April 2011, which was also causally connected to her fall in December 2010. However, the WCJ credited the testimony of Employer's Knee Specialist that Claimant fully

---

[3] In addition, Employer presented the testimony of David Herold, its Director of Admissions, regarding his observations of Claimant at work. It also presented the deposition testimony of Barbara Berger, R.N., its Health Services Manager, who testified regarding Employer's offers of modified duty work to Claimant.

recovered from the contusion and the fracture as of the date of Employer's Knee Specialist's examination in January 2012. Further, based on the credited testimony of Claimant and her Physician, the WCJ found Claimant rejected Employer's offers of modified duty work in good faith. Thus, the WCJ granted Claimant's claim petition and denied Employer's modification/suspension and review petitions.

As to Claimant's penalty petition, the WCJ determined that, after issuing a notice stopping temporary compensation and a "medical-only" NCD, Employer, through its actions and admissions, including its answer to Claimant's claim petition, the proposed agreement for compensation, statements made by its counsel at hearing, and the filing of a review petition to remove the disc herniation from the description of injury, effectively nullified the notice stopping temporary compensation. The WCJ determined these actions and admissions created a "*de facto*" notice of compensation payable (NCP) as to Claimant's L4-5 disc herniation and right knee contusion. WCJ's Op., 6/27/13, Finding of Fact (F.F.) No. 16. The WCJ further determined Employer's failure to pay indemnity benefits pursuant to the *de facto* NCP constituted a violation of the Act warranting imposition of a 50% penalty on indemnity benefits due through December 18, 2011, the date Employer filed its review petition seeking to abrogate liability for Claimant's lumbar disc herniation. Employer appealed to the Board.

On appeal, the Board affirmed the WCJ's grant of Claimant's claim petition and the denial of Employer's modification/suspension and review petitions in light of the WCJ's decision to credit the testimony of Claimant and her

Physician over the testimony of Employer's medical experts. The Board also rejected Employer's arguments that the WCJ did not issue a "reasoned decision" as required by Section 422(a) of the Act, 77 P.S. §834, that the WCJ capriciously disregarded evidence, and that Claimant's Physician's testimony was incompetent to support the WCJ's decision. The Board also noted that, in lieu of providing an extensive summary of the testimony presented, the WCJ appended to his decision a proposed summary of the evidence submitted by Employer. The Board rejected Employer's various assertions that the WCJ's decision to do so was in error.

As to Claimant's penalty petition, however, the Board reversed the WCJ on the ground that Claimant did not establish a violation of the Act. Specifically, the Board explained that Employer was permitted to use an NTCP while it continued its investigation of Claimant's claim. Employer subsequently issued a notice stopping temporary compensation and a "medical-only" NCD, which was also permissible, and it properly answered the claim petition by admitting the alleged injuries occurred but denying disability. Further, the Board stated, Employer contested disability based on an IME conducted about three months after the injury, and it offered Claimant work within the restrictions set forth by its medical experts. The Board rejected the WCJ's determination that Employer misused Bureau documents. As such, the Board determined that no penalty was warranted. These cross-petitions for review followed.

9

## II. Issues

In its appeal,[4] Employer argues the WCJ erred in denying its modification/suspension petition where the uncontroverted medical evidence showed Claimant was capable of returning to sedentary work after her work injury, which Employer offered her. It also contends that the WCJ erred in determining Claimant's work injury included a lumbar disc herniation and right knee fracture. Additionally, Employer asserts the Board properly reversed the WCJ's grant of Claimant's penalty petition in the absence of any proven violation of the Act.

In her appeal, Claimant contends the Board erred in reversing the WCJ's grant of her penalty petition where Employer misused Bureau documents in order to negate its *de facto* acceptance of liability for Claimant's work injury. Claimant also refutes Employer's arguments that the WCJ erred in denying its modification/suspension petition, and that the WCJ erred in determining Claimant's lumbar disc herniation and right knee fracture were caused by the work incident.

## III. Discussion

Initially, we note, as the ultimate fact-finder in workers' compensation cases, the WCJ "has exclusive province over questions of credibility and evidentiary weight …." A & J Builders, Inc. v. Workers' Comp. Appeal Bd.

---

[4] Our review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. Dep't of Transp. v. Workers' Comp. Appeal Bd. (Clippinger), 38 A.3d 1037 (Pa. Cmwlth. 2011).

10

(Verdi), 78 A.3d 1233, 1238 (Pa. Cmwlth. 2013). The WCJ may accept or reject the testimony of any witness, including an expert witness, in whole or in part. Id.

Moreover, "[i]t is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether there is evidence to support the findings actually made." Furnari v. Workers' Comp. Appeal Bd. (Temple Inland), 90 A.3d 53, 60 (Pa. Cmwlth. 2014) (citation omitted). We examine the entire record to see if it contains evidence a reasonable person might find sufficient to support the WCJ's findings. Id. If the record contains such evidence, the findings must be upheld, even though the record may contain conflicting evidence. Id. Additionally, we must view the evidence in the light most favorable to the prevailing party and give it the benefit of all inferences reasonably deduced from the evidence. Id.

### A. WCJ's Denial of Employer's Modification/Suspension Petition

Employer first contends the WCJ erred in denying its modification/suspension petitions where the uncontroverted medical evidence established that Claimant was capable of returning to work in the modified duty position that Employer offered her on three occasions after the 2010 work incident. Citing the "Summary of the Evidence" that the WCJ referred to and appended to his decision, see F.F. No. 5, Employer argues it is uncontroverted that after the work incident, Claimant was released to return to modified duty work within her restrictions, and Employer offered her the opportunity to do so. Because the evidence is uncontroverted, Employer asserts, the WCJ had no choice but to rule that Claimant was capable of returning to work in the modified duty position

11

Employer offered her, in accordance with the releases issued by Claimant's Physician and Employer's two medical experts.

"[A]n employer seeking a suspension of benefits bears the burden of proving that, although a claimant continues to have residual physical impairment due to the work injury, employment is available to the claimant within [her] restrictions which would result in no loss of wages to the claimant." Turner v. Workers' Comp. Appeal Bd. (City of Pittsburgh), 78 A.3d 1224, 1227 (Pa. Cmwlth. 2013). "To establish that such employment is available, the employer needs to present evidence of available positions within the claimant's restrictions." Id. Obviously, to justify a suspension, the employer's evidence of a job offer within the claimant's medical restrictions must be accepted as credible. Channellock v. Workers' Comp. Appeal Bd. (Reynolds), 72 A.3d 731 (Pa. Cmwlth. 2013).

Here, in denying Employer's modification/suspension petitions, the WCJ found:

> 8. The testimony and opinions of [Claimant's Physician] are found credible as they support Claimant's rejection of the employment referrals made to her by … Employer. In this connection, he reviewed a job description as submitted to … Claimant, and testified: 'I mean, I have concerns about a few items on the job description. I mean, I think that she's again, very limited from a functional standpoint. I don't think that she could really respond to stat orders to administer medications or in an emergency setting.' (Dr. Greis [Dep., 8/30/11, Notes of Testimony (N.T.) at] 18 … While the lay witnesses presented by [Employer] - both on the employment referrals and otherwise were sincere — and there was a

> showing of willingness to accommodate … Claimant, <u>the combined testimony of</u> … <u>Claimant and her treating doctor, [Claimant's Physician], support a good faith rejection of the referrals of duties as an admissions nurse (with modifications) at</u> … <u>Employer's Hospital (a subacute hospital and rehabilitation center treating addictions to drugs and alcohol, with an acute psych unit and geriatric psych unit</u>; [Barbara Berger Dep., 11/29/11, N.T. at] 6-7). In this regard, as presented, it is noted (but not determinative) that a number of relevant details were omitted from the written offers.

F.F. No. 8 (emphasis added). The WCJ also credited Claimant's testimony, stating:

> The testimony of … Claimant is found credible as it supports the occurrence of her work injuries and resulting disability, and the opinions of [Claimant's Physician]. … Due to her work injuries, namely, the L4-5 disc herniation, and related radiculopathy as found and explained by [Claimant's Physician], Claimant has remained disabled, with concomitant wage loss since she last worked ….

F.F. No. 10.

The WCJ's findings that Claimant was incapable of performing the duties required by the modified positions offered by Employer are directly supported by the credited testimony of Claimant and her Physician. Pet'r's R.R. at 42, 46, 64-66 (Claimant's Physician's testimony); Resp't's R.R. at 91-94 (Claimant's testimony). Employer's arguments to the contrary, which essentially

13

invite this Court to reweigh the evidence and revisit the WCJ's credibility determinations, fail.[5]

Further, while the WCJ referred to the proposed "Summary of the Evidence" submitted by Employer's counsel, which summarized the testimony of each witness, see F.F. No. 5, rather than summarizing that testimony himself, the WCJ then rendered several "hard" findings that resolved the evidentiary conflicts and issues of credibility, and he thoroughly explained his reasons for doing so. See F.F. Nos. 6-11. This Court holds that "a WCJ may adopt, verbatim, findings of

---

[5] We also reject Employer's very brief arguments that the WCJ's denial of its modification/suspension petitions was not "reasoned" as contemplated by Section 422(a) of the Act, 77 P.S. §834, and that the WCJ capriciously disregarded evidence in denying Employer's modification/suspension petitions.

To satisfy the reasoned decision requirements of Section 422(a) of the Act, a WCJ must set forth the rationale for the decision by specifying the evidence relied upon and reasons for accepting it. Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.), 828 A.2d 1043 (Pa. 2003); Dorsey v. Workers' Comp. Appeal Bd. (Crossing Constr. Co.), 893 A.2d 191 (Pa. Cmwlth. 2006). When conflicting evidence is presented, a WCJ must adequately explain the reasons for rejecting or discrediting competent evidence. Daniels. "[T]he purpose of a reasoned decision is to spare the reviewing court from having to imagine why the WCJ believed one witness over another." Dorsey, 893 A.2d at 196 (citation omitted). "However, Section 422(a) does not permit a party to challenge or second-guess the WCJ's reasons for credibility determinations." Id. at 195. "Unless made arbitrarily or capriciously, a WCJ's credibility determinations will be upheld on appeal." Id. Contrary to Employer's assertion, the WCJ here issued a reasoned decision in accordance with Section 422(a) of the Act. Specifically, the WCJ properly considered the evidence before him, made all necessary findings and conclusions, and clearly articulated his reasons for accepting and rejecting testimony.

As to Employer's capricious disregard argument, our Supreme Court explains, "where there is substantial evidence to support an agency's factual findings, and those findings in turn support the conclusions, it should remain a rare instance in which an appellate court would disturb an adjudication based upon capricious disregard." Leon E. Wintermyer, Inc. v. Workers' Comp. Appeal Bd. (Marlowe), 812 A.2d 478, 487 n.14 (Pa. 2002); see also McCool v. Workers' Comp. Appeal Bd. (Sunoco, Inc.), 78 A.3d 1250 (Pa. Cmwlth. 2013). Here, because the WCJ's findings that Claimant was incapable of performing the modified duty positions offered by Employer are supported by substantial evidence and those findings in turn support the WCJ's denial of Employer's modification/suspension petitions, we discern no capricious disregard of evidence by the WCJ.

14

fact submitted by a party so long as substantial evidence in the record supports the findings." Dillon v. Workers' Comp. Appeal Bd. (City of Phila), 853 A.2d 413, 421 (Pa. Cmwlth. 2004) (en banc) (citing Cnty. of Delaware v. Workmen's Comp. Appeal Bd. (Thomas), 649 A.2d 491, 495 (Pa. Cmwlth. 1994)). Here, we discern no error in the WCJ's decision to reference and append to his decision Employer's summary of the evidence, and then render "hard" findings that fully resolved the petitions before him.

In the treatise Pennsylvania Workers' Compensation Law and Practice, the authors observe:

> A consistent issue under Pennsylvania practice, for appellate judges, is difficulty in interpreting WCJ decisions that do not segregate 'summary findings' from actual credibility resolutions or 'hard findings.' Most WCJ's [sic] very properly, and even necessarily, will reiterate at the outset of an opinion summaries of what the evidence has been and what the parties have said. Findings of fact must ultimately reveal, however, credibility determinations and resolutions of all essential factual disputes. Findings will be inadequate if they merely summarize or recite the evidence.

David B. Torrey and Andrew E. Greenberg, 7 WORKERS' COMPENSATION LAW AND PRACTICE §13:137 (3rd ed.). Here, the WCJ properly segregated the summary of evidence from his "hard findings" in which he made the necessary credibility determinations and resolved the relevant factual disputes in disposing of the petitions before him. Compare F.F. No. 5 (referencing the "Summary of Evidence" submitted by Employer, which the WCJ appended to his decision) with F.F. Nos. 6-11 (resolving issues of credibility and conflicts in the evidence in deciding the parties' various petitions). Thus, no error is apparent in this regard.

15

## B. WCJ's Grant of Claimant's Claim Petition

Employer next contends the record lacks substantial, competent medical evidence that supports the WCJ's determinations that Claimant suffered a lumbar disc herniation at L4-5 or a right knee fracture that were caused by the December 2010 work incident. Thus, Employer argues the WCJ erred in granting Claimant's claim petition as to these alleged injuries.

In a claim petition proceeding, the burden of proving all necessary elements to support an award rests with the claimant. Inglis House v. Workmen's Comp. Appeal Bd. (Reedy), 634 A.2d 592 (Pa. 1993). The claimant must establish her injury was sustained during the course and scope of employment and is causally related thereto. McCabe v. Workers' Comp. Appeal Bd. (Dep't of Revenue), 806 A.2d 512 (Pa. Cmwlth. 2002). Where the causal connection between employment and injury is not obvious, the claimant must present unequivocal medical testimony to establish that connection.[6] Rife v. Workers' Comp. Appeal Bd. (Whitetail Ski Co.), 812 A.2d 750 (Pa. Cmwlth. 2002). Further, where there is no obvious causal relationship between an injury and a disability, the claimant must establish such a causal connection with unequivocal

---

[6] Medical testimony will be found unequivocal if the medical expert, after providing a foundation, testifies that, in his professional opinion, he believes or thinks a certain fact or condition exists. Amandeo v. Workers' Comp. Appeal Bd. (Conagra Foods), 37 A.3d 72 (Pa. Cmwlth. 2012). "The question of whether expert medical testimony is unequivocal, and, thus, competent evidence to support factual determinations is a question of law subject to our review." Id. at 80. In making such a determination, we must review the medical expert's testimony as a whole. Id. Further, even if the witness admits to uncertainty, reservation, doubt or lack of information with respect to scientific or medical details, as long as the witness does not recant the opinion first expressed, the evidence is unequivocal. Cerro Metal Prods. v. Workers' Comp. Appeal Bd. (PLEWA), 855 A.2d 932 (Pa. Cmwlth. 2004).

medical testimony.  Budd Trailer Co., Inc. v. Workmen's Comp. Appeal Bd. (Behney), 524 A.2d 525 (Pa. Cmwlth. 1987).

An expert's medical opinion regarding causation may be based on a history obtained from the claimant, assumed facts of record, and/or medical reports submitted into evidence.  Se. Pa. Transp. Auth. v. Workers' Comp. Appeal Bd. (Herder), 765 A.2d 414 (Pa. Cmwlth. 2000).  Further, "when delivering a causation opinion in a workers' compensation case, a doctor … is not required to use magic words such as 'substantial contributing factor,' 'materially contributed,' or … 'cause in fact.'  Rather, [i]t is only necessary that the doctor's testimony permit a valid inference that such causation was present."  Pa. State Univ. v. Workers' Comp. Appeal Bd. (Rabin), 53 A.3d 126 (Pa. Cmwlth. 2012) (quoting Thomas Lindstrom Co. v. Workers' Comp. Appeal Bd. (Braun), 992 A.2d 961, 967 (Pa. Cmwlth. 2010)).

In addition, injuries unrelated to a claimant's job are compensable, if they are the proximate or the natural and probable result of a prior work-related injury.  GTE Sylvania v. Workmen's Comp. Appeal Bd. (Lydon), 458 A.2d 1050 (Pa. Cmwlth. 1983).  Thus, "[w]here an employer is liable for an injury which impairs the physical condition of the claimant's body [it] is also liable for compensation of injury received in a subsequent accident which would not have occurred if the claimant's bodily efficiency had not been impaired in the first [work-related] accident."  Id. at 1051.  As such, where an injury is caused by a non-work-related event, the injury may, nevertheless, be compensable where the claimant establishes that "but for" a prior work injury, the eventual off-premises

17

injury would not have occurred. David B. Torrey and Andrew E. Greenberg, 8 WORKERS' COMPENSATION LAW AND PRACTICE §20:89 (3rd ed.).

Here, the WCJ found (with emphasis added):

6.      On review, it is found that Claimant sustained work injuries on December 27, 2010, when she fell on ice while exiting the Employer/Hospital. The testimony and opinions of [Claimant's Physician] are found credible and persuasive as they support, and it is here found, that the work incident of December 27, 2010 resulted in a L4-5 disc herniation/extrusion; this work injury has likewise resulted in lumbar radiculopathy (left leg): 'I definitely think that she has a work-related lumbar radiculopathy as a result of her fall and a disc extrusion at L4-5.' (Dr. Greis [Dep.], NT 10) [Claimant's Physician] further reported/explained (in dealing with a MRI study in January 2011) that to the extent there was a small disc herniation present prior to the work injury, it got significantly worse after the fall at work. (Dr. Greis [Dep.], NT 48-50) [Claimant's Physician] testified: 'But I believe that given her new onset [of] L-4 radicular symptoms that that herniation changed in some degree.' (Dr. Greis [Dep.], NT 50).

7.      Moreover, the opinions of [Claimant's Physician] are accepted as credible as he supports, and it is here found, that the lateral tibial plateau fracture (right knee), sustained when Claimant fell at home on April [2011], is compensable. While clearly not directly resulting from the relevant work injury, her ensuing leg symptoms (stemming from the work related L4-5 radiculopathy) 'definitely contributed' to the right knee injury/fracture, and causation was 'indirect.' (Dr. Greis [Dep.], NT 16; See, NT 15: 'It's the left leg with the radiculopathy. And she explained that she put her weight on her right side and twisted her right knee.'). His testimony in that regard, as related to causation, is accepted over [Employer's] medical experts who did not find a causal relationship given Claimant's pre-injury long standing

18

bilateral knee problems. [Claimant's Physician] noted pre-existing problems also: e.g., when questioned about Claimant's pre-existing valgus deformity, he noted it can affect gait, but that Claimant had 'adapted' to the problem; Dr. Greis [Dep.], NT 43. …

* * * *

9.     In accepting the testimony and opinions of [Claimant's Physician] (who is associated with The Rothman Institute) as credible and persuasive, it is initially observed that he is a treating physician with experience following the Claimant over time on a regular basis.  Moreover, and of some significance, Claimant was referred to him by [Employer's] Carrier.  (Dr. Greis [Dep.], NT 7).  His opinions were cogent; his testimony provides examples of well reasoned explanations for his opinions.  His testimony and opinions are accepted over [Employer's] medical experts as noted in this [d]ecision … The undersigned is mindful of the pre-existing medical history as advanced by [Employer].  Further, it is noted that in part, the testimony of [Employer's Spine Specialist] supports the opinions of Dr. Greis: While he changed his initial opinion that the work related injury had resulted in a L4-5 disc herniation, he did not reject the reality of the condition itself: 'I have not changed my opinions that, in fact, her symptoms are related to an L4-5 herniation, based on what she presented with that day.' (Dr. Kahanovitz [Dep.], NT 31). While in the end [Employer's Spine Specialist] rejected the disc herniation as causally related to the fall at work (essentially based on his review of prior medical documentation), his initial acceptance of the disc injury in measure lends support to a finding that the nature/mechanism of the work incident (the fall) was sufficient to have resulted in the disc herniation.

10.     The testimony of … Claimant is found credible as it supports the occurrence of her work injuries and resulting disability, and the opinions of [Claimant's Physician].  Despite her prior medical history and any ambulatory problems … immediately prior to the work injury she was performing her duties without restrictions;

19

thereafter she could not. <u>Due to her work injuries, namely, the L4-5 disc herniation, and related radiculopathy as found and explained by [Claimant's Physician], Claimant has remained disabled, with concomitant wage loss since she last worked</u> … <u>She has remained under medical care, and has not fully recovered</u>.

11. The above determinations, made on the merits of the claim … warrant the grant of the instant Claim Petition (treated as well as a Review Petition in reference to the right knee fracture) … and a denial of … Employer's Review Petition (filed to abrogate responsibility for the L4-5 disc herniation aspects of the case).

F.F. Nos. 6-7, 9-11. As is clear from the record citations and excerpts of testimony that accompany the WCJ's findings, Claimant's Physician's opinion testimony adequately supports the WCJ's findings that Claimant proved her L4-5 disc herniation and right knee lateral tibial plateau fracture were causally related to the December 2010 work incident. Pet'r's R.R. at 37-38, 44. Again, Employer's arguments to the contrary invite a reweighing of the expert medical testimony presented to the fact-finder and a revisiting of the fact-finder's credibility determinations, which we cannot do.[7]

---

[7] We also reject Employer's very brief arguments that the WCJ's grant of Claimant's claim petition was not "reasoned" as contemplated by Section 422(a) of the Act, and that the WCJ's decision constituted a capricious disregard of the evidence.

As set forth above, competent medical testimony supports the WCJ's findings that Claimant's L4-5 disc herniation and right knee lateral tibial plateau fracture were causally related to the December 2010 work incident; thus, no error is apparent in the WCJ's grant of Claimant's claim petition. Further, as is apparent from F.F. No. 9, the WCJ more than adequately explained his reasons for crediting Claimant's Physician's opinions over those expressed by Employer's medical experts. Further, the WCJ properly considered the evidence before him, made all necessary findings and conclusions, and clearly articulated his reasons for accepting and rejecting the testimony. Thus, the WCJ's decision satisfies the reasoned decision requirement. See, e.g., Dorsey. Additionally, because the WCJ's findings are supported by substantial

**(Footnote continued on next page…)**

Nevertheless, Employer challenges the competency of Claimant's Physician's opinion regarding Claimant's right knee lateral tibial plateau fracture on the ground that Claimant's Physician lacked a sufficient foundation upon which to render such an opinion. Contrary to Employer's assertions, our review of Claimant's Physician's testimony reveals that Claimant's Physician based his opinion as to causation of the right knee lateral tibial plateau fracture on his observations and treatment of Claimant, the history Claimant provided him regarding the injury and the medical records of Dr. Aksu.[8] Pet'r's R.R. at 14-17. Further, Claimant's Physician's testimony is consistent with Claimant's testimony regarding the manner in which the knee injury occurred. Pet'r's R.R. at 174-75. In short, Claimant's Physician's testimony constitutes competent evidence to support the WCJ's finding that Claimant's right knee lateral tibial plateau fracture was causally related to her work injury.

### C. WCJ's Grant of Claimant's Penalty Petition

As a final issue, Claimant argues the Board erred in reversing the WCJ's award of a 50% penalty against Employer. She contends that Employer's obligation to pay wage loss benefits pursuant to the NTCP that it issued was not

---

**(continued…)**

evidence and those findings in turn support the WCJ's grant of Claimant's claim petition, we discern no capricious disregard by the WCJ. See Wintermyer; McCool.

[8] An expert may base his opinion in part on the medical records of others even if those records were not introduced into evidence so long as they are the kind of records upon which the medical professional customarily relies in the practice of his profession. Westinghouse Elec. Corp./CBS v. Workers' Comp. Appeal Bd. (Burger), 838 A.2d 831 (Pa. Cmwlth. 2003); Empire Steel Castings, Inc. v. Workers' Comp. Appeal Bd. (Cruceta), 749 A.2d 1021 (Pa. Cmwlth. 2000).

21

nullified by its subsequent issuance of a notice stopping temporary compensation because Employer's subsequent actions amounted to a *de facto* NCP. To that end, Claimant argues that evidence of Employer's acceptance of liability is memorialized in the record by: (1) Employer's admissions in its answer to Claimant's claim petition; (2) the proposed agreement for compensation that Employer forwarded to Claimant; (3) Employer's payment of indemnity benefits after challenging Claimant's disability through an NCD; and, (4) Employer's counsel's admissions and stipulations at the November 2011 WCJ hearing. Claimant asserts Employer's failure to pay benefits pursuant to the *de facto* NCP, which its own words and actions confirmed, and its unilateral stoppage of benefits, constituted a dual violation of the Act and the Board thus erred in reversing the WCJ's award of penalties.

Employer counters that the Board properly reversed the WCJ's grant of Claimant's penalty petition based on its determination that Employer did not violate any provision of the Act. Employer asserts the Board's ruling is sound. Employer argues it sought to fairly and with extraordinary transparency, administer Claimant's workers' compensation claim. Indeed, Employer asserts, it administered the claim in accordance with the requirements of Section 406.1(d) of the Act[9] (stating that in any instance where an employer is uncertain whether a claim is compensable or is uncertain of the extent of its liability, an employer may initiate compensation payments without prejudice and without admitting liability through a NTCP), and controlling case law. Moreover, Employer maintains, at all

_____

[9] Section 406.1(d) of the Act was added by the Act of February 8, 1972, P.L. 25, as amended, 77 P.S. §717.1(d).

22

times below, it advised both Claimant and the WCJ as to the manner in which it investigated and administered Claimant's claim. Employer contends the WCJ's justification for imposition of a penalty is unsupported by both the facts and the law.

With regard to the imposition of penalties, Section 435(d) of the Act provides, in relevant part:

> The department, the board, or any court which may hear any proceedings brought under this act shall have the power to impose penalties as provided herein for violations of the provisions of this act or such rules and regulations or rules of procedure:
>
> (i) Employers and insurers may be penalized a sum not exceeding ten per centum of the amount awarded and interest accrued and payable: Provided, however, That such penalty may be increased to fifty per centum in cases of unreasonable or excessive delays. Such penalty shall be payable to the same persons to whom the compensation is payable.

77 P.S. §991(d).[10] "The assessment of penalties, and the amount of penalties imposed are matters within the WCJ's discretion." Gumm v. Workers' Comp. Appeal Bd. (Steel), 942 A.2d 222, 232 (Pa. Cmwlth. 2008).

"However, 'a violation of the Act or its regulations must appear in the record for a penalty to be appropriate.'" Id. (quoting Shuster v. Workers' Comp. Appeal Bd. (Pa. Human Relations Comm'n), 745 A.2d 1282, 1288 (Pa. Cmwlth. 2000)). Thus, "[n]o penalty may be imposed under [Section 435] [of the Act]

---

[10] This Section was added by Section 3 of Act of February 8, 1972, P.L. 25.

23

absent proof of a violation of the Act or the rules of the department or board." Id. (quoting Spangler v. Workmen's Comp. Appeal Bd. (Ford), 602 A.2d 446, 448 (Pa. Cmwlth. 1992)). "Further, a claimant who files a penalty petition bears the burden of proving a violation of the Act occurred. If the claimant meets … her initial burden of proving a violation, the burden then shifts to the employer to prove it did not violate the Act." Id. (citation omitted).

Here, through her penalty petition, Claimant alleged: "[Employer] violated the terms of the [Act] by illegally pulling the [NTCP]. Furthermore, the Act was violated by a blatant disregard for the medical evidence in describing the injury on the box 4 [("medical-only")] NCD]." Pet'r's R.R. at 2.

In granting Claimant's penalty petition, the WCJ found:

12. … [I]t is initially observed that [in] the [NCD] issued when the [NTCP] was stopped … Employer acknowledged an injury took place, but challenged disability (so-called Box 4 denial). Thereafter … Employer's Answer … to the Claim Petition 'admitted that on December 27, 2010, [C]laimant suffered a moderate left disc herniation at L4-5 and a right knee contusion.' Thereafter … [Employer] forwarded to … Claimant an Agreement for Compensation to sign, stating it had to notify the Bureau 'of your change in work and medical status.' (Exhibit C-3). While there was no such change (Claimant is found to have acted in good faith in refusing the job offer as noted above), Claimant was asked to sign the Agreement (a check for partial benefits based upon the Employer's job referral was also enclosed). Claimant did not accept the terms indicated, and did not sign. Significantly, however, as applied here, the Agreement as presented to … Claimant acknowledged the compensability of the 12/27/10 work

24

injury as referenced in the [NCD] that had been issued several days before.

13. Further, and importantly, the Answer of [Employer] to the instant Claim Petition admitted the date of injury, the description of the injury, and notice of the injury, and went on to state: '[Employer] has accepted [C]laimant's December 27, 2010 work injury as compensable pursuant to a [NCD] issued on April 1, 2011, acknowledging the compensability of her December 27, 2010 work injury.' The Answer also alleged Claimant's absence from work is not attributable to the 12/27/10 work incident, and that it had provided an opportunity for Claimant to return to work (and at best partial benefits were due).

14. Thereafter, at hearing … Employer again agreed … Claimant had sustained the L4-5 disc herniation and right knee contusion/sprain (Hearing, 11/16/11, NT 62-63); at the same time, it was noted that a Review Petition might be filed in the future, depending upon continuing investigation of the claim.

15. Within the above context, Claimant asserts there has been an improper use of the NTCP; there was no valid basis for stopping it under the circumstances. … [I]t appears that the admissions made by [Employer] after stopping the NTCP, both in its [NCD], proposed Agreement, and Answer to the Claim Petition, all confirmed at hearing on November 16, 2011 (almost a year after the injury), effectively nullified the notice stopping the [NTCP] in this case.

16. Essentially, by action and deed, it appears … Employer accepted responsibility with the equal force of a [NCP] as to the disc herniation and right knee contusion/strain …. [Employer's] filing of its Review Petition is implicit, if not express, recognition of a binding acceptance of responsibility as if a NCP had been in fact issued. Why file the Review Petition to eliminate L4-5 disc herniation compensation responsibility unless by force of law such liability exists? Why not just rely on the stoppage notice relating to the NTCP? … Here,

25

failure to pay in the face of a *de facto* NCP violated the Act and warrants a penalty. Upon consideration of the circumstances, and in the exercise of discretion, a penalty of 50% will be assessed on the disability compensation due under this Decision through December 18, 2011, (the date the Bureau received the [Employer's] Review Petition seeking to abrogate liability for Claimant's disc herniation at L4-5), with interest as provided by the Act.

F.F. Nos. 12-16.

In reversing the WCJ's grant of the penalty petition, the Board determined Claimant did not establish a violation of the Act on the record. The Board determined Employer was permitted to issue an NTCP while it continued to investigate the claim. Employer then issued a timely notice stopping temporary compensation and a "medical-only" NCD, which was also permissible, and it answered the claim petition properly by admitting the injuries occurred but denying disability. The Board explained Employer contested disability based on an IME conducted about three months after the work incident, and its offers of employment that it alleged were within Claimant's capacity. While the WCJ awarded a 50% penalty for a violation of the Act described as a misuse of Bureau documents by issuing a timely "medical-only" NCD and continuing to contest disability, the Board disagreed that Employer misused Bureau documents. Thus, it reversed the WCJ's finding of a violation of the Act and the corresponding grant of Claimant's penalty petition.

Upon review, we agree with the Board that Claimant did not establish a violation of the Act. More particularly, following Claimant's December 27, 2010 work incident, Employer issued an NTCP, and it paid Claimant total disability

benefits for a 90-day period beginning January 4, 2011. Pet'r's R.R. at 22. Prior to the expiration of the required 90-day period, Employer issued a notice stopping temporary compensation as required by Section 406.1(d)(6) of the Act. Pet'r's R.R. at 23. On the same date, Employer issued an NCD in which it alleged that, although an injury occurred, Claimant was not disabled as a result of the injury within the meaning of the Act. Certified Record (C.R.), Ex. C-2. As the Board indicated, the filing of a "medical-only" NCD was permissible. See Zuchelli v. Workers' Comp. Appeal Bd. (Indiana Univ. of Pa.), 35 A.3d 801 (Pa. Cmwlth. 2011). To that end, an employer may properly file an NCD when it disputes a claimant's disability, even though it does not dispute a work-related injury occurred. Potere v. Workers' Comp. Appeal Bd. (Kemcorp), 21 A.3d 684 (Pa. Cmwlth. 2011). In fact, the NCD form provides an employer with the option of acknowledging the occurrence of a work-related injury but declining to pay compensation benefits on the basis that the claimant is not disabled as a result of the work injury. Employer exercised that option here. Id.[11]

In addition, in its answer to Claimant's subsequently filed claim petition, although Employer admitted Claimant sustained a moderate left disc herniation at L4-5 and a right knee contusion on the date of the work incident, it

---

[11] In Zuchelli v. Workers' Compensation Appeal Board (Indiana University of Pennsylvania), 35 A.3d 801 (Pa. Cmwlth. 2011), we noted that, "in 2011, the Bureau of Workers' Compensation revised the NCD form. Employers are now instructed not to accept medical only cases by use of the NCD form. The form employers should use is the medical-only NCP." Id. at 806 n.4. (citation omitted). Here, when Employer filed its "medical-only" NCD form in April 2011 (prior to our decision in Zuchelli), it used the 2009 version of the form.

specifically referenced its prior, "medical-only" NCD in which it acknowledged the occurrence of the work injuries, but disputed disability. Pet'r's R.R. at 9.

Shortly after issuing its notice stopping temporary compensation and its "medical-only" NCD, Employer forwarded Claimant a proposed agreement for compensation, covering the limited period of March 30 through April 24, 2011, a period in which it made part-time, modified duty work available to Claimant. C.R., Ex. C-3. Employer included a check for $1,689.11, which represented partial disability benefits for this period. Id. The proposed agreement also stated that, as of April 25, 2011, Employer's medical expert opined Claimant could return to full-time modified duty work, which was made available to Claimant with no loss of earnings. Id. Significantly, the proposed agreement also expressly stated that "this Agreement for Compensation shall not abrogate the challenge that [Employer] made pursuant to its [NCD] form," which, as noted above admitted an injury occurred but denied disability under the Act. Id. (emphasis added). Although Claimant cashed the check, she did not execute the proposed agreement. Pet'r's R.R. at 171.

Further, contrary to the WCJ's findings, at the WCJ's November 2011 hearing, Employer's counsel did not definitively indicate that Employer accepted liability *for indemnity benefits* for Claimant's L4-5 disc herniation. Rather, Employer's counsel expressly stated that Employer had not completed its investigation regarding the extent of the compensable injuries, including the L4-5 disc herniation, because Employer did not yet have all of the necessary medical records. In short, we do not believe Employer's counsel's statements were

28

inconsistent with the "medical-only" NCD it issued in which it acknowledged the injuries occurred but denied disability.  See C.R., WCJ's Hearing, N.T., 11/16/11, at 56-67.

Finally, in granting Claimant's penalty petition, the WCJ found it significant that Employer filed a review petition, stating that filing was "implicit, if not express, recognition of a binding acceptance of responsibility as if a NCP had in fact been issued."  Id.  We disagree with the WCJ's assessment.  Through its review petition, Employer sought to correct the description of the injury set forth in the NTCP Employer issued.  Employer alleged, based on the further analysis of its Spine Specialist, Claimant's work injury did not include a disc herniation at L4-5 or any apparent low back injury.   It also indicated that its investigation of Claimant's alleged work-related right knee injury was continuing.   While Employer's filing of a review petition certainly appears unorthodox in these circumstances, we do not believe it supports the WCJ's determination that the filing shows Employer's acknowledgment that it previously accepted liability for indemnity benefits for Claimant's L4-5 disc herniation as if it had filed an NCP.  This is particularly true given Employer's consistent actions, set forth above, of acknowledging the occurrence of a work injury, but denying Claimant suffered any resulting disability.

For these reasons, and contrary to the WCJ's determination, we discern no inconsistency between Employer's filings and its subsequent alleged admissions or actions.  Thus, we agree with the Board that Claimant did not

establish a violation of the Act on the record. As a result, we affirm the Board's reversal of the WCJ's grant of Claimant's penalty petition.[12]

Based on the foregoing, we affirm the order of the Board.

ROBERT SIMPSON, Judge

---

[12] We also reject Claimant's reliance on Kelly v. Workmen's Compensation Appeal Board (DePalma Roofing), 669 A.2d 1023 (Pa. Cmwlth. 1995), and Mosgo v. Workmen's Compensation Appeal Board (Tri-Area Beverage, Inc.), 480 A.2d 1285 (Pa. Cmwlth. 1984) for the proposition that Employer's inclusion of a check for partial disability benefits with its proposed agreement for compensation estopped Employer from challenging Claimant's right to ongoing disability benefits, which essentially created a *de facto* NCP. These cases are distinguishable.

More particularly, in both Kelly and Mosgo, the employers made compensation payments to the claimants, while also failing to issue timely notices of compensation payable or denial. As set forth above, Employer here timely issued the appropriate documents. Additionally, the relevant timeframes in both Kelly and Mosgo predated the 1993 creation of the NTCP procedure, which expressly allows an employer to initiate compensation payments without prejudice and without admitting liability pursuant to an NTCP where an employer is uncertain whether a claim is compensable or is uncertain of the extent of its liability. Employer availed itself of that procedure here. See Aldridge v. Workers' Comp. Appeal Bd. (Kmart Corp.), 113 A.3d 861 (Pa. Cmwlth. 2015) (distinguishing Mosgo, in part, because it predated 1993 amendments to the Act). Further, although Employer here sent Claimant a payment for three weeks of partial disability benefits with the proposed agreement for compensation, Claimant did not execute the agreement. Pet'r's R.R. at 53. And, as stated above, the agreement expressly indicated that Employer would not abrogate its challenge pursuant to its "medical-only" NCD. C.R., Ex. C-3.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Judy McCarraher,                          :
                    Petitioner            :
                                          :
            v.                            :     No. 1983 C.D. 2014
                                          :
Workers' Compensation Appeal Board        :
(Eagleville Hospital),                    :
                    Respondent            :

Eagleville Hospital,                      :
                    Petitioner            :
                                          :
            v.                            :     No. 1991 C.D. 2014
                                          :
Workers' Compensation Appeal Board        :
(McCarraher),                             :
                    Respondent            :

# **O R D E R**

**AND NOW**, this 3rd day of November, 2015, the order of the Workers' Compensation Appeal Board is **AFFIRMED**.

_____
ROBERT SIMPSON, Judge